IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SUSAN L. STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16CV1232 |
| | ) | |
| ZMC HOTELS, INC. d/b/a BEST | ) | |
| WESTERN PLUS, and THYSSENKRUPP | ) | |
| ELEVATOR CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff initiated this negligence action against Defendants ThyssenKrupp Elevator Corporation ("ThyssenKrupp") and ZMC Hotels, Inc. d/b/a Best Western Plus ("ZMC") in Guilford County Superior Court. (ECF No. 3.) Defendants then removed the case to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. (ECF No. 1.) Before the Court are: (1) Defendant ThyssenKrupp's Motion for Summary Judgment, (ECF No. 23), and (2) Defendant ZMC's Motion for Summary Judgment, (ECF No. 25). For the reasons stated below, both motions will be granted, and this action will be dismissed with prejudice.

I. BACKGROUND

Plaintiff's Complaint alleges that she sustained injuries while a patron at the Best Western Plus ("Best Western") hotel in Goldsboro, North Carolina, operated by ZMC. (ECF No. 3 at 2, 3.) Plaintiff's injuries occurred when she stepped into an elevator that was allegedly not level with the lobby floor and fell. (*Id.* at 2.) At the time of her fall, the elevator was being serviced by ThyssenKrupp. (*Id.*)

On October 30, 2014, two ThyssenKrupp employees, Toby Gravley and Heber Race, arrived at the Best Western to install a "soft starter" in one of the hotel's elevators pursuant to a work order made by ZMC. (ECF No. 28-7 at 15; ECF No. 28-8 at 9; ECF No. 28-9 at 8.) Before beginning the work, Mr. Gravley rode the elevator in question to each floor of the hotel, stopping to place an out-of-service tag over the call button for the elevator on each floor. (ECF No. 28-8 at 12–13, 57; *see also* ECF No. 28-2 at 2.) Mr. Gravley then "locked out" the elevator, thereby removing the power supply to the elevator so they could replace the soft starter. (ECF No. 28-8 at 12, 13.) Both mechanics then went to the elevator equipment room, about fifty to seventy-five feet away from the elevator, to replace the soft starter. (*Id.* at 10.) After replacing the soft starter, they restored power to the elevator, returned to the lobby, and pressed the call button. (*Id.* at 14.) The doors did not open, so the mechanics returned to the equipment room to troubleshoot this new problem. (*Id.*) The lock-outs were not replaced and the power to the elevator remained on, because they could not troubleshoot this problem with the power turned off. (*Id.* at 17–18.) While the two were in the equipment room, a hotel employee informed them that Plaintiff had fallen in the elevator. (*Id.* at 14–15.)

Plaintiff had checked into the Best Western either one or two days before the accident and rode the elevator multiple times without noticing any problems. (ECF No. 28-7 at 15, 16.) On the day of the fall, Plaintiff returned to the hotel around 1:45 PM and approached the elevator, which is not visible from the front desk. (*Id.* at 14.) According to Plaintiff, the elevator doors were open when she approached, so she did not look at the call button and did not see the out-of-service tag. (*Id.* at 21.) She alleges that she was looking at a sign posted in the back of the elevator as she stepped into the elevator. (*Id.*) She did not notice that the elevator had

2

misleveled and was three to five inches below the level of the lobby floor. (*Id.* at 25, 28; *see also* ECF No. 28-6.) Plaintiff fell when she stepped into the elevator, later requiring surgery on her knee. (ECF No. 28-7 at 21, 34.)

Both ThyssenKrupp and ZMC now independently move for summary judgment. (ECF No. 23; ECF No. 25.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence would permit a reasonable jury to find for the nonmoving party, and "[a] fact is material if it might affect the outcome" of the litigation. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 (4th Cir. 2015) (internal quotation marks omitted). The role of the court is not "to weigh the evidence and determine the truth of the matter," but rather "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). When reviewing a motion for summary judgment, the court must "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the nonmoving party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).

In cases where, as here, the nonmovant bears the burden of proof at trial, the party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, then the burden shifts

to the nonmoving party to point out "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party must support its assertions by citing to particular parts of the record, or showing that the materials cited do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1); *see Celotex*, 477 U.S. at 324. The judicial inquiry on summary judgment "thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

### III. THYSSENKRUPP'S MOTION FOR SUMMARY JUDGMENT

ThyssenKrupp claims that it is entitled to summary judgment for two reasons: (1) "the material, undisputed facts show that ThyssenKrupp was not negligent," (ECF No. 23 ¶ 3); and (2) Plaintiff was contributorily negligent, (*id.* ¶ 4). Specifically, the company contends that Plaintiff can present no evidence to support her allegations that it was negligent in servicing the elevator or that its employees breached their duty of care. (ECF No. 24 at 7.) ThyssenKrupp also argues that "Plaintiff was contributorily negligent as a matter of law because the fact that the elevator was misleveled was open and obvious and because Plaintiff failed to heed the warning that the elevator was out-of-service." (ECF No. 23 ¶ 4) Plaintiff, on the other hand, argues that ThyssenKrupp negligently created the hazard that caused her injury and that its employees had constructive knowledge of the hazard. (ECF No. 28 at 10, 11.) Plaintiff also contends that the question of her contributory negligence is a question for the jury. (*Id.* at 12.)

4

Under North Carolina law,[1] to establish a claim of negligence, Plaintiff must prove four essential elements: "duty, breach of duty, proximate cause, and damages." *Estate of Mullis v. Monroe Oil Co.*, 505 S.E.2d 131, 135 (N.C. 1998). "Actionable negligence occurs when a defendant owing a duty fails to exercise the degree of care that a reasonable and prudent person would exercise under similar conditions, or where such a defendant of ordinary prudence would have foreseen that the plaintiff's injury was probable under the circumstances." *Martishius v. Carolco Studios, Inc.*, 562 S.E.2d 887, 892 (N.C. 2002) (internal citations omitted). The duty of care "does not require perfect prescience, but instead extends only to causes of injury that were reasonably foreseeable and avoidable through the exercise of due care." *Fussell v. N.C. Farm Bureau Mut. Ins. Co.*, 695 S.E.2d 437, 440 (N.C. 2010) (citing *Stein v. Asheville City Bd. of Educ.*, 626 S.E.2d 263, 267 (N.C. 2006); *Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99, 100 (N.Y. 1928)). Negligence may be found "if by the exercise of reasonable care the defendant might have foreseen that some injury would result from his conduct or that consequences of a generally injurious nature might have been expected. Usually the question of foreseeability is one for the jury." *Id.* (quoting *Slaughter v. Slaughter*, 142 S.E.2d 683, 686 (N.C. 1965)).

Here, the question is whether ThyssenKrupp breached its duty of reasonable care owed to Plaintiff, a patron of the hotel where it was servicing the elevator. (*See* ECF No. 24 at 9; ECF No. 28 at 8.) ThyssenKrupp argues that there is no evidence in the record that it breached its duty because it had no knowledge that the elevator was misleveled or that it was otherwise

---

[1] *See Francis v. Allstate Ins. Co.*, 709 F.3d 362, 369 (4th Cir. 2013) ("A federal court sitting in diversity is required to apply the substantive law of the forum state.").

5

negligent in its maintenance. (ECF No. 24 at 11.) Plaintiff claims that ThyssenKrupp employees should have reasonably foreseen that the elevator would mislevel while they were troubleshooting, so they were negligent when they: (1) failed to lockout/tagout the elevator, and (2) did not place more prominent or visible warnings that the elevator was out of service. (ECF No. 28 at 10–11.) For the reasons stated below, there is no material support for Plaintiff's contentions in the record and thus Defendant ThyssenKrupp is entitled to summary judgment as a matter of law.

Plaintiff contends that ThyssenKrupp was negligent because it was reasonably foreseeable that the elevator would mislevel.[2] (*Id.* at 12.) Plaintiff points to Mr. Race's deposition testimony, in which he said the following about the elevator misleveling:

> Q. Do you know what caused the elevator floor to be mislevel with the lobby floor?
>
> A. Whenever we had cut the power off and we were doing the starter repair – or change-out, it had leaked down in the system. So – and really that's not normal for it to happen just as we're cutting it off, you know, for the elevator to leak down in the pit, but that's – that's what had to have happened, is it leaked down whenever we had the power off.
>
> Q. Have you ever – on a job you've worked on, have you ever had that happen before, that the elevator leaked down when the power was off?
>
> A. Not in just a short period of time, maybe overnight or something like that. In a few hours, you come back – once you've got the power off, it may have leaked down, yes, sir.

---

[2] Plaintiff's contention that ThyssenKrupp had actual knowledge that the elevator was misleveled has no support in the record. (*See* ECF No. 28 at 11.) The elevator was not misleveled when Mr. Gravley rode it to place the out-of-service tags on each floor. (ECF No. 28-8 at 14.) Also, ThyssenKrupp was only called to the hotel to replace the soft starter, (*see id.* at 9–10); it was not notified of any problems with misleveling.

6

(ECF No. 28-9 at 10–11.) Plaintiff characterizes this testimony as evidence that the ThyssenKrupp employees knew that the elevator repair might cause the elevator to mislevel. (ECF No. 28 at 12.) This Court disagrees. This testimony establishes that Mr. Race was able, with the benefit of hindsight, to think of a reason why the elevator would mislevel. His conclusion, when discussing the misleveling, that "really that's not normal" for the elevator to leak down "in just a short period of time," (ECF No. 28-9 at 10), runs counter to Plaintiff's argument about the likelihood or foreseeability of such an event. This testimony does not show that the ThyssenKrupp employees could have foreseen that the elevator would mislevel and the doors would open. Because Plaintiff has not offered any other evidence to establish what a reasonably prudent person would foresee under these facts, Plaintiff has failed to point to "specific facts showing that there is a genuine issue for trial" on the issue of reasonable foreseeability. *Matsushita Elec. Indus. Co.,* 475 U.S. at 587.

Plaintiff next argues that the ThyssenKrupp employees were negligent in failing to power down the elevator before returning to the equipment room to troubleshoot. (ECF No. 28 at 12.) Plaintiff claims that they "violated their own Safety steps on their 'Repair Pre-Start Safety and Job Checklist' by failing to lockout/tagout the elevator before leaving it unattended again." (*Id.*) A company's policies may "represent some evidence of a reasonably prudent standard of care," but "voluntary written policies and procedures do not themselves establish a *per se* standard of due care." *Klassette v. Mecklenburg Cty. Area Mental Health*, 364 S.E.2d 179, 183 (N.C. Ct. App. 1988). Plaintiff, however, has not established any such violation of ThyssenKrupp's safety standards in this case.

7

Plaintiff's contention that the ThyssenKrupp employees violated their company policy by failing to lockout/tagout the elevator before leaving it unattended misstates the ThyssenKrupp safety standards. Those standards state that "[l]ockout/tagout procedures are to be followed," but there is no further evidence in the record as to exactly which circumstances demand the elevator to be locked-out/tagged-out. (ECF No. 28-8 at 59.) In this case, the employees had properly locked-out/tagged-out the elevator before repairing the soft starter. (*Id.* at 12, 59.) After they restored power to the elevator, they discovered the second problem: the doors would not open. (*Id.* at 14.) Plaintiff was injured while they were troubleshooting that second problem, which required the elevator to be powered on in order to troubleshoot, according to Mr. Gravley who testified as follows:

> Q. All right. When you went out and discovered that the door wasn't working –
>
> A. Yes, sir.
>
> Q. – and then went back to the equipment room, did you put the lock-out back on?
>
> A. No, because we had to have power on to diagnose and troubleshoot the elevator. If we put it on, we'd have had to turn the power back off, and we wouldn't have been able to troubleshoot it.
>
> Q. Okay. Is there any way to disconnect power to the elevator door without disconnecting power to what you need to work on back in the equipment room?
>
> A. I was trying to think. On that particular model, not that I recall, no.

(*Id.* at 17–18.) Because the elevator needed to be powered on to troubleshoot this problem, it is not reasonable to conclude that ThyssenKrupp "lockout/tagout procedures" would require the elevator to be powered off while the employees troubleshot this particular problem. Absent any additional evidence in the record regarding the standard of care for lockout/tagout

8

practices when troubleshooting this type of problem, Plaintiff has failed to present adequate evidence that the failure to lockout/tagout the elevator was a breach of the duty of reasonable care.

Lastly, Plaintiff argues that ThyssenKrupp was negligent "by not placing a more prominent/visible warning or barricade" in front of the elevator. (ECF No. 28 at 11.) Plaintiff lists a number of additional precautions that ThyssenKrupp "could have" taken, but fails to point to any evidence in the record that would establish that those additional precautions are what a reasonably prudent person would have done in this situation. (*Id.*) Without any evidence of a different standard of care for an elevator mechanic while troubleshooting a problem under these facts, Plaintiff has failed to "cit[e] to particular parts of materials in the record" to support its claim that the standard of care was breached. Fed. R. Civ. P. 56(c)(1)(A).

Because Defendant ThyssenKrupp has shown an absence of a genuine dispute as to any material fact regarding the issue of its negligence, and Plaintiff has failed to point to any "specific facts showing that there is a genuine issue for trial," ThyssenKrupp is entitled to summary judgment as a matter of law. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

ThyssenKrupp also argues that Plaintiff was contributorily negligent as a matter of law, and the company is therefore entitled to summary judgment. (ECF No. 23 ¶ 4.) Because this Court has found that Plaintiff has failed to point to sufficient evidence in the record for a reasonable jury to conclude that ThyssenKrupp was negligent, the Court "need not address contributory negligence." *See Petersen v. Midgett*, 140 F. Supp. 3d 490, 507 (E.D.N.C. 2015) ("Here, given [Plaintiff's] failure of proof on causation, the court need not address contributory negligence.").

## IV. ZMC'S MOTION FOR SUMMARY JUDGMENT

In its motion for summary judgment, ZMC claims that it is entitled to summary judgment for three reasons: (1) "there is no genuine issue as to any material fact with respect to the negligence of defendant ZMC," (ECF No. 25 at 1); (2) it should not be held liable for any negligence by ThyssenKrupp, (ECF No. 31 at 2); and (3) Plaintiff was contributorily negligent, (ECF No. 25 at 1). Specifically, it contends that Plaintiff can present no evidence to support her allegations that it knew or should have known about the elevator misleveling. (ECF No. 27 at 5.) ZMC also argues that innkeepers do not have a nondelegable duty to exercise reasonable care in maintaining its premises, so it should not be liable for any negligence by its independent contractor, ThyssenKrupp. (ECF No. 31 at 2.) Plaintiff argues, in response, that ZMC had constructive notice of the hazard, and that it should be liable for any negligence by ThyssenKrupp. (ECF No. 28 at 8, 12.) Plaintiff also contends that the question of her contributory negligence is a question for the jury. (*Id.* at 12–15.)

ZMC, as a landowner, has a duty to exercise reasonable care in maintaining its premises for all lawful visitors. *Martishius*, 562 S.E.2d at 893 (citing *Nelson v. Freeland*, 507 S.E.2d 882, 892 (N.C. 1998)). A plaintiff can prove a breach of this duty by "show[ing] that the defendant either (1) negligently created the condition causing the injury, or (2) negligently failed to correct the condition after actual or constructive notice of its existence." *Roumillat v. Simplistic Enters., Inc.*, 414 S.E.2d 339, 342–43 (N.C. 1992), *abrogated on other grounds by Nelson*, 507 S.E.2d 882 (N.C. 1998).

Plaintiff does not point to any evidence in the record that shows that ZMC or its employees either negligently created the condition causing Plaintiff's injury or that it had either

actual or constructive notice of the condition. (*See* ECF No. 28 at 9–12.) Plaintiff repeatedly refers to ThyssenKrupp and ZMC collectively as "Defendants," rarely making any distinction between the two parties in her arguments related to negligence. (*See id.*) In all of those arguments, however, she only points to actions taken by ThyssenKrupp. ZMC had no part in creating the condition that caused the injury, because it was not involved in the repair or maintenance of the elevator on the day of the accident. (ECF No. 28-8 at 38.) ZMC also had no actual or constructive notice of the hazard's existence. The elevator was out of sight from the front desk, (ECF No. 28-7 at 14), and there is no evidence as to how long the elevator door was open before Plaintiff was injured. Thus, Plaintiff has failed to point to evidence in the record from which a jury could reasonably conclude that ZMC was itself negligent in how it maintained its premises.

Plaintiff next argues that ZMC should be held liable for any negligence exhibited by its independent contractor, ThyssenKrupp. "Generally, one who employs an independent contractor is not liable for the independent contractor's negligence," *Woodson v. Rowland*, 407 S.E.2d 222, 234 (N.C. 1991), unless that person has a nondelegable duty to act with reasonable care, *Medley v. N.C. Dep't of Corr.*, 412 S.E.2d 654, 659 (N.C. 1992). Plaintiff argues that ZMC, as an innkeeper, has such a nondelegable duty in this case, citing in support *Page v. Sloan*, 190 S.E.2d 189, 192 (N.C. 1972). (ECF No. 28 at 7.) ZMC counters, "[t]he cases cited by the plaintiff reflect an antiquated view of an innkeeper's role in society," pointing to the fact that Plaintiff did not cite "any case decided within the last 45 years to support her argument." (ECF No. 31 at 2.) Because, however, this Court has concluded that Plaintiff has failed to offer

sufficient evidence to support its claim of negligence against ThyssenKrupp, the Court need not reach the issue of whether an innkeeper has a nondelegable duty to use due care.

ZMC also argues, like its co-defendant ThyssenKrupp, that Plaintiff was contributorily negligent as a matter of law and that it is therefore entitled to summary judgment. (ECF No. 25 at 1.) Because this Court has found that Plaintiff has failed to point to sufficient evidence in the record for a reasonable jury to conclude that ZMC was negligent, the Court "need not address contributory negligence." *See Petersen*, 140 F. Supp. 3d at 507.

For the reasons outlined herein, the Court enters the following:

**ORDER**

IT IS THEREFORE ORDERED that the following two motions are GRANTED: Defendant ThyssenKrupp's Motion for Summary Judgment, (ECF No. 23), and Defendant ZMC's Motion for Summary Judgment, (ECF No. 25). Plaintiff's claims against both Defendant ThyssenKrupp and Defendant ZMC are hereby DISMISSED with prejudice.

This, the 4th day of September, 2018.

/s/ Loretta C. Biggs
United States District Judge